Harry FALK, Administrator of the Estate of William A. Colina, Deceased, Plaintiff-Appellant,

v.

The UNITED STATES of America and Elmer Day, Defendants-Appellees.

No. 16975.

United States Court of Appeals Sixth Circuit.

April 7, 1967.

Philip J. Schneider, Cincinnati, Ohio, for plaintiff-appellant, Waite, Schindel, Bayless & Schneider, Cincinnati, Ohio, on the brief.

Walter H. Fleischer, Dept. of Justice, Washington, D. C., for defendants-appellees, John W. Douglas, Asst. Atty. Gen., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., Joseph P. Kinneary, U. S. Atty., Cincinnati, Ohio, on the brief.

Before O'SULLIVAN and EDWARDS, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This action, based on the Federal Tort Claims Act (Section 2674, Title 28, U.S. C.), was begun in the United States District Court for the Southern District of Ohio, Western Division at Cincinnati, on May 4, 1957. The action was brought by the plaintiff, Harry Falk, as administrator of the Estate of William A. Colina, deceased, against the United States, John Louis Hirt and Elmer Day.

The facts as alleged in the complaint may be briefly stated as follows: On May 7, 1955, the decedent, during a heavy rain storm, was driving his automobile in a northerly direction on Central Parkway in the city of Cincinnati. While being in a stopped position for a traffic control signal, his automobile was struck in the rear by an automobile driven by the defendant John Louis Hirt. As a result of this collision, the decedent was thrown about in his car, the door was knocked open and the decedent was drenched in the rain.

While the decedent was awaiting the arrival of the police to report the accident the defendant Elmer Day, driving a truck as agent for the United States and in the performance of his duties, drove the truck into the automobile of the deceased. As a result of this collision, the deceased was thrown violently about in his automobile in such a manner as to drench him with rain.

It is alleged "that due directly and proximately to the concurrent negligence of the Defendants herein, Plaintiff's decedent received such injuries as resulted in his death." It is further alleged that the automobile was damaged to the extent of $1070 and that the widow, Theresa Colina, suffered a financial loss of $150,000. The prayer of the complaint was for $150,000.

Answers denying negligence and alleging that the decedent's injuries were caused by his contributory negligence or the sole negligence of the defendant Hirt were promptly filed. On motion of defendant Hirt, he was dismissed as a defendant in the action on March 17, 1958, for want of jurisdiction. Thereafter no action was taken on this case in the District Court until it came on for pre-trial in January 1965. Following this, in June, the district judge sustained the motion of the defendants Elmer Day and the United States for a summary judgment and dismissed the complaint. The plaintiff appealed.

Simultaneously with the filing of the complaint in the District Court, the plaintiff filed an identical petition in the Common Pleas Court of Hamilton County, Ohio, naming John Louis Hirt and Elmer Day as defendants. On July 5, 1960, the plaintiff filed a second amended petition against John Louis Hirt only, in which he alleged two causes of action. The first cause of action was for wrongful death for the benefit of the widow, and the second was a survivorship action for damages sustained by the deceased during the time that he survived after the accident. It was alleged in this second amended petition that, "As a direct and proximate result of the aforesaid negligence of the defendant, John Louis Hirt, plaintiff's decedent contracted pneumonia from which he died on September 30, 1955." No reference was made in this amended petition to the collision between the United States truck and the decedent's automobile.

By agreement of counsel and with the consent of the court, the District Court case was held in abeyance pending the trial of the case in the Common Pleas Court.

The case came on for trial in the Common Pleas Court in February, 1963. At the conclusion of the opening statement [1]

---

[1] Now, Ladies and gentlemen, back in, I believe it was May 7, 1955, at about 4:30 in the afternoon, Mr. Colina was driving his automobile towards the Western Hills Viaduct and was stopped by a traffic light. At that time there was a torrential downpour. It was really pouring down rain, and he stood there for several seconds when the automobile operated by the Defendant ran into the rear of his automobile. As is usual, he got out to see what the damage was and he

by counsel for the plaintiff, on motion of counsel for the defendant, the trial judge withdrew the case from the jury and entered judgment for the defendant. After the motion and prior to judgment, counsel for plaintiff withdrew, without prejudice, from the second cause of action the claim of damage to the automobile. The judgment entry did not recite the basis of the judge's decision nor did he give any written opinion. The Court of Appeals for the First Appellate District, Hamilton County, Ohio, affirmed without opinion. The Supreme Court of Ohio denied certiorari. We assume that the basis of the judge's decision was that there was no causal connection between the collision and the decedent's death.

Subsequent to the disposition of the case against Hirt in the state court, the plaintiff-appellant filed a pre-trial statement in the District Court on December 29, 1964. In this statement the facts of the collisions were alleged substantially the same as they were alleged in the complaint in the District Court and as they were alleged in the second amended petition in the Common Pleas Court. Contrary to the theory in the Common Pleas Court that death was caused by pneumonia and complications arising therefrom, it was alleged that "Plaintiff's decedent was thrown forward and

got wet. Then he went to report the accident, to call for the police, and to call for a tow vehicle because he had tried his car and it would not run. So that the damage in that particular accident was sufficient so that it damaged the transmission and the car would not operate, so it had to be towed away, and in going to a telephone where he could call for the police and a tow vehicle, he became drenched, and it was a cold, miserable day.

"And he went back and the police did not call the vehicle that he had asked them to call but called somebody else, and he, as a result, was at the scene of this accident for a considerable period of time. Finally, a tow vehicle did come and towed his car away. There was damage to the frame and ·damage to the differential, I believe they call it, so that it would not operate, and that we will prove by evidence in this case."

\* \* \* \* \*

"Now, he, Mr. Colina, contracted a severe cold immediately that evening, and he had chills and fever, and that cold developed into pneumonia and he was very seriously ill for a considerable period of time under treatment of doctors, and while treating for this pneumonia the doctors gave him penicillin twice. He had a violent reaction to those two penicillin shots. The first one his body swelled substantially, and the second one he had hives and was severely ill from that treatment. Of course, they discontinued that and went into other forms of treatment. However, the evidence will be that, from the time of this accident when he first contracted this cold, then pneumonia and continued to suffer, he never went back to his job, He was in bed practically all of that time for 146 days, when he finally died.

"Now, the evidence will be that this condition which was caused by the giving of the penicillin caused an inflammation to his arteries, and the inflammation of the arteries was—that continued to get worse, and then there was nodules—or the doctors will explain that to you—nodules that were thrown off, which caused clogging of the various arteries, and he continued on the downgrade. He was in the hospital, I believe, two different times. He was in the Good Samaritan Hospital and then he was in Jewish Hospital, and he finally died 146 days later. So I believe the evidence will show that there was a severe collision that caused him to not be able to operate his automobile, caused him to get out and get drenched, which caused his pneumonia and chain of events which was his death."

\* \* \* \* \*

"Now, we believe the evidence will show that there was negligence, and while there was another automobile owned by the United States Government that did come along later and run into it, it was the severity of the blow of this accident which caused him to have to call the police, to have to call a wrecker, to have to get out of his car, to have to get soaked, and that caused the chain of events which caused his death. And I believe, when you have heard all the evidence, you will be satisfied that there was sufficient negligence on the part of the Defendant in this case to warrant a judgment for full compensation for all of the loss that has been incurred in this case."

injured his arm and chest, which contusion caused a blood clot and embolism, which, in turn, developed complications and resulted in illness, hospitalization, and finally death, after 146 days."

The pre-trial order under date of January 13, 1965, recited *inter alia*, that the action was for wrongful death and that the court had jurisdiction under Section 1331, Title 28, U.S.C. The pre-trial statements of the parties were ordered filed and made a part of the pre-trial order.

Thereafter, on June 4, 1965, counsel for the defendants, Day and the United States, moved to require the plaintiff to state his separate claims in separate causes of action, to make his allegations more definite and certain as to liability and damage and for summary judgment in favor of the plaintiffs. The district judge, in a memorandum opinion, denied the procedural motions to amend the complaint and sustained the motion for summary judgment.

■ The district judge said in his opinion,

"Plaintiff alleges that his decedent contracted a cold as a result of these drenchings which eventually developed into pneumonia. While being treated for this latter condition decedent had a violent reaction to the penicillin administered to him, which in turn lead to various complications allegedly resulting in his death."

We do not interpret the complaint filed on May 4, 1957, as making such allegations. It is alleged that both collisions caused the deceased to be drenched with rain, but there is no reference to the decedent contracting pneumonia. It is alleged that due to the concurrent negligence of the defendants, the decedent received injuries which resulted in his death. By this complaint, under the liberal rules of federal pleading (Rule 8(a), F.R.Civ.P.) the plaintiff could prove any act of negligence of the driver of the United States truck and any theory of the cause of death which was a proximate result of the negligence.

■ It is alleged that the defendant Day drove the truck into the decedent's car while it was in a stopped position. This allegation makes a strong case of negligence on the part of the defendant Day. If such negligence is established the plaintiff, as administrator of the deceased, would be entitled to recover such damages as naturally and proximately flow as a result thereof. The plaintiff alleges in his pre-trial statement that the negligence of the defendant Day in causing the collision of the truck of the United States with the decedent's car caused a blood clot and embolism which developed complications that eventually caused death.

■ We do not think the theory of estoppel by judgment upon which the district judge based his decision is applicable to the facts of this case. In the first place, the parties are not the same, and secondly, the cause of death as alleged in the Common Pleas Court and in the District Court are not identical. First Nat. Bank of Cincinnati v. Berkshire Life Ins. Co., 176 Ohio St. 395, 199 N.E.2d 863, holds that estoppel by judgment is not applicable where the issues are not identical, and may not be asserted "by one not a party or in privity with a party" to the prior action. The cause of death as alleged in the case before us was not litigated in the Common Pleas Court.

Whether the plaintiff can prove that the negligence of the defendant Day or the concurrent negligence of Day and Hirt proximately caused the decedent's death is not now before us. We conclude that he should be given an opportunity to try to establish his theory.

Reversed and remanded to the District Court for trial.